IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBIN KINCAID, on behalf of herself and
as the Personal Representative of the
ESTATE OF E.J. KINCAID

      Plaintiff,

v.

                                                                                                 No. 2:23-cv-00644 KWR-JHR

THE GEO GROUP, INC., d/b/a
LEA COUNTY CORRECTIONAL FACILITY,
a corporation; DWAYNE SANTISTEVAN, in
his individual and official capacities as the
acting Warden of the Lea County Correctional
Facility; ERIC ESTRADA, in his individual
And official capacities as a detention officer with
The Lea County Correctional Facility;
MOISES ANDRADE, in his individual
and official capacities as a detention officer with
the Lea County Correctional Facility; and JASON
RESENDEZ, in his individual
and official capacities as a detention officer with
the Lea County Correctional Facility

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL FOR FAILURE TO STATE A CLAIM**

THIS MATTER comes before the Court upon Defendants' Motion for Partial Dismissal for Failure to State a Claim and Memorandum of Law In Support, filed on May 14, 2024 **(Doc. 20).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well taken, and therefore, is **GRANTED**. The Court further declines to exercise supplemental jurisdiction in the absence of claims over which it has original jurisdiction.

1

The Court therefore **DISMISSES** Plaintiff's additional state law claims.

## BACKGROUND

Decedent E.J. Kincaid (hereinafter "Mr. Kincaid") was incarcerated at the Lea County Correctional Facility ("LCCF"), which is owned and operated by Defendant GEO Group, Inc. (hereinafter "Defendant GEO") **(Doc. 15 at ¶ 1, ¶4)**. During the period of his incarceration, Plaintiff Robin Kincaid alleges that Mr. Kincaid suffered threats of death and serious bodily injury from "violent, dangerous inmates while in Defendant's custody" and Plaintiff felt compelled to place money in other inmates' accounts to "prevent [Mr. Kincaid] from being harmed" **(*Id.* at ¶¶20, 42)**. Plaintiff alleges that Mr. Kincaid was essentially "in solitary confinement" while living without a cellmate in a pod that was on lockdown **(*Id.* at ¶22)**. Mr. Kincaid suffered from mental health issues, as documented in his prison intake, but apparently did not receive mental health treatment while incarcerated until the time of his death **(*Id.* at ¶23)**. Plaintiff alleges that this violated Defendant GEO's policies **(*Id.*)**. Plaintiff further asserts that these alleged lapses in care were the result of the actions of three "Defendant Officers": Eric Estrada, Moises Andrade, and Jason Resendez **(*Id.* at ¶¶53-54)**. Defendant Eric Estrada is a sergeant at LCCF **(*Id.* at ¶10)**. Defendant Moises Andrade is a detention officer at LCCF **(*Id.* at ¶11)**. Defendant Jason Resendez is also a detention officer at LCCF **(*Id.* at ¶12)**. Plaintiff also alleges that there are several unknown officers, referred to as Officers Does 1-10, who also contributed to the lapse of care **(*Id.* at ¶80)**.

On August 4, 2021, prison officials placed Mr. Kincaid in a cell apparently known as the "suicide cell," which had allegedly been the place of several suicides and suicide attempts **(*Id.* at ¶26-27)**. Plaintiff alleges that this is because there is a concrete pillar precluding surveillance cameras from viewing the cell **(*Id.* at ¶30)**. Plaintiff also alleges that there was "little to no

rounding" by guards during the time Mr. Kincaid was in the cell, and that Mr. Kincaid had blocked the door of his cell with a sheet *(Id.* **at ¶ 25)**. Plaintiff alleges that Defendants GEO and Santistevan knew that Mr. Kincaid had access to "various tools and apparatuses he could use . . . to hang himself," including "blankets, shoelaces, ropes used to string towels and razors" *(Id.* **at ¶40)**.

While housed in this cell, Mr. Kincaid tragically used a bedsheet to attempt suicide by hanging himself in his cell *(Id.* **at ¶31; Doc. 20 at 2)**. Officials' efforts to revive Mr. Kincaid were unsuccessful and he was later pronounced dead **(Doc. 20 at 2)**.

On April 11, 2024, Plaintiff filed the Second Amended Complaint under 42 U.S.C. §1983 and New Mexico state tort law asserting the following claims:

> Count I: Deliberate Indifference to Serious Mental Health Needs in Violation of the Eighth Amendment to the Constitution of the United States (42 U.S.C. § 1983) by the Geo Group, Inc.
>
> Count II: Deliberate Indifference to Serious Mental Health Needs in Violation of the Eighth Amendment to the Constitution of the United States (42 U.S.C. § 1983) by Individual Defendants Estrada, Andrade, Resendez, and Santistevan.
>
> Count III: Negligence/Gross Negligence by All Defendants
>
> Count IV: Violation of Geo Policies and Procedures by All Defendants
>
> Count V: Intentional Infliction of Emotional Distress by Individual Defendants Estrada, Andrade, Resendez, and Santistevan.
>
> Count VI: Loss of Consortium by All Defendants.

Defendants filed this motion for dismissal of Counts I, II, and VI **(Doc. 20)**.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Plaintiff asserts that Defendants were deliberately indifferent to Mr. Kincaid's risk of suicide such that they should be held constitutionally liable for the actions resulting in his death. As explained below, the Court finds that Plaintiff has not alleged sufficient facts to support findings of entity (or "*Monell*") liability as to Defendant GEO, individual liability as to the Defendant-Officers, or supervisory liability as to Defendant Santistevan.

Plaintiff's constitutional claims are asserted pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). Plaintiff's loss of consortium claim is asserted pursuant to New Mexico state tort law. The Court addresses the sufficiency of Plaintiff's allegations in turn below.

I. **Plaintiff has not sufficiently alleged that Defendant GEO is liable in its entity capacity for violating Mr. Kincaid's Eighth Amendment rights under *Monell*.**

Plaintiff alleges in Count 1 that Defendant GEO is liable as a municipal entity for the actions of three of its officers under its supervision, Defendants Eric Estrada, Moises Andrade, and Jason Resendez, referred to in the complaint and hereinafter as Defendant-Officers (**Doc. 15 at ¶¶ 10-13**). To establish Defendant GEO's liability as an entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (hereinafter "*Monell* liability"), Plaintiff must demonstrate that the individual officers in question caused some constitutional violation, that the supervisory-defendant created or promulgated a policy that directly caused that constitutional violation, and that the supervisory-defendant acted with the requisite state of mind to cause that constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011). As such, the court's inquiry must first be into whether Plaintiff has sufficiently alleged that Defendant-Officers violated Mr. Kincaid's Eighth Amendment rights before moving onto Defendant GEO's alleged *Monell* liability.

A state prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment, as applied to the states via the Fourteenth Amendment. See *Farmer v. Brennan*, 511 U.S. 825 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981). While officials "cannot absolutely guarantee the safety of their prisoners," they have a constitutional duty to take "reasonable steps to protect prisoners' safety and bodily integrity." *Est. of Burgaz by & through Zommer v. Bd. of Cnty. Commissioners for Jefferson Cnty. Colorado*, 30 F.4th 1181, 1186 (10th Cir. 2022) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015)) ("*Burgaz*"). It is for this reason that courts treat claims borne out of inmate suicides as "failure of the jail officials to provide necessary medical care for those in their custody." *Id*. "Such claims require proof that a prison official acted with deliberate indifference to the detainee's serious

medical needs." *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246 (10th Cir. 2022) ("*Beaver Cnty.*").

A cognizable Eighth Amendment claim against an individual—rather than a public entity or supervisor—contains both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 825 (1994). To satisfy the subjective component, the official must know of and disregard the substantial risk of serious harm. *Id.* at 837. The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* the official must also draw the inference. *Id.*

To satisfy the objective requirement, the plaintiff must first demonstrate that "the deprivation [was] sufficiently serious to warrant intervention or treatment." *Burgaz*, 30 F.4th at 1186 (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). "Death by suicide satisfies that standard." *Id*.

Because Mr. Kincaid's suicide satisfies the objective component, *id.*, the Court's inquiry is into whether the Defendant-Officers' knew of and disregarded the substantial risk that Mr. Kincaid would imminently commit suicide. The Court finds that even viewing the alleged facts in a light most favorable to Plaintiff, Plaintiff still fails to meet that burden.

1. *Lack of allegations regarding immediate suicidal ideation*

First, there is no indication that the Defendant-Officers knew or could have known that Mr. Kincaid was actively suicidal. Mr. Kincaid was receiving some form of mental health treatment while incarcerated at LCCF, though the extent and nature of the treatment is unclear **(Doc. 15 at ¶72)**. However, Plaintiff alleges no facts to suggest that Mr. Kincaid made statements indicating suicidal ideation, nor that he had made any previous suicide attempts at all, much less to any of the Defendant-Officers. *Burgaz*, 30 F.4th at 1188 ("There are no allegations Ms. Burgaz expressed

suicidality or intentions to harm herself."). Nor has Plaintiff alleged that Mr. Kincaid had ever been placed on suicide watch, either while under the watch of the Defendant-Officers or otherwise. *Id*. ("Nor did the Estate allege Ms. Burgaz had been placed on suicide watch during this particular stint at the JCDF"). At most, the Defendant-Officers could have known that they were "interacting with a distressed detainee with a history of mental illness and self-harm. But there were no obvious indicators of suicide present" as alleged in the SAC. *Id.*

Moreover, the stressors Plaintiff alleges contributed to Mr. Kincaid's ultimate suicide do not immediately give rise to an inference suggesting suicidality. Plaintiff opines that:

> The Defendant Officers manifested deliberate indifference to Decedent Kincaid's serious psychological needs by failing to provide for any manner of suicide watch or other preventive measures, despite their knowledge that Decedent Kincaid (1) had suffered from the loss of his close brother, (2) had been danger from other inmates, (3) had been putting money on other inmates accounts to avoid being attacked, and (4) was experiencing depression at the time of his cell reassignment.

**(Doc. 15 at ¶53).**

Plaintiff has not alleged sufficient facts to indicate that that the Defendant-Officers knew or could have known about these stressors. Nor is there indication based on Plaintiff's allegations that the Defendant-Officers had been trained to know that these stressors could give rise to suicidality. *See Burgaz*, 30 F.4th at 1188 ("And there is no allegation Deputy Pesapane had been educated to know Ms. Burgaz's grave disappointment at not being released created an imminent risk of suicide."). The Defendant-Officers could not have disregarded facts about which they did not know, nor could they make inferences about an immediate risk of suicide. *Farmer*, 511 U.S. at 840 (". . . Eighth Amendment liability requires consciousness of risk. . ..").

   2. *Violation of prison policy does not automatically violate the Eighth Amendment*

Plaintiff further alleges that the Defendant-Officers manifested further deliberate indifference in their "numerous and repeated violations" of prison policies **(Doc. 15 at ¶54).**

7

However, the Tenth Circuit has held that "failing to follow prison policy is not a constitutional violation in and of itself." *Beaver County*, 32 F.4th at 1250; *see also Ernst v. Creek Cnty. Pub. Facilities Auth.*, 697 F. App'x 931 (10th Cir. 2017) (same). Merely demonstrating a pattern of violation of prison policy—even suicide prevention policy—is insufficient to demonstrate an Eighth Amendment without further evidence of deliberate indifference to a specifically serious risk that an inmate might imminently commit suicide. *Id*. at 1254 (holding that a demonstration "that officers failed to comply with the County's suicide-prevention policy during [an inmate suicide] . . . [was] insufficient to establish deliberate indifference to suicide-prevention training."). While it is true that Defendant-Officers may have acted in violation of LCCF policy, that does not itself constitute a constitutional violation.

Moreover, while Plaintiff alleges that it appeared custom for the Defendant-Officers to violate GEO policy **(Doc. 15 at ¶¶** "Plaintiff fails to demonstrate an "informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). But while Plaintiff points clearly to Defendant-Officers potentially failing to follow LCCF policies in this case, Plaintiff has not demonstrated that the failure to follow these policies was a widespread practice so permanent and well-settled as to have the force of law. **(Doc. 15 at ¶¶51-52, 60-62)**. Rather, Plaintiff makes general assertions about the existence of lapses in policy at LCCF, but fails to demonstrate how these alleged failures extended beyond Mr. Kincaid's case such that they could constitute any sort of custom.

Indeed, several of Plaintiff's allegations are more generalized criticisms of prison policy regarding handling inmates' mental health crises **(Doc. 15 at ¶¶70-76)**, but these general criticisms

do not demonstrate how Defendant-Officers were *specifically* deliberately indifferent to Mr. Kincaid's potential risk of suicide or . While it may be true that the Defendant failed to implement adequate mental health treatment procedures **(Doc. 15 at ¶¶71-72)** and failed to correct deficiencies in the general administration of mental health treatment at LCCF **(*Id*. at ¶73)**, these administrative oversights—if they even are within the Defendant-Officers' purview—"do not demonstrate a conscious disregard of the risk [of suicide]" specifically to Mr. Kincaid. *Bame v. Iron Cnty.*, 566 F. App'x 731, 739 (10th Cir. 2014); *see also Beaver County*, F. 4th at 1255 (general lapses in suicide-prevention policy do not constitute deliberate indifference).

Ultimately, while deeply tragic, the specific facts alleged to have given rise to Mr. Kincaid's death do not plausibly suggest that the Defendant-Officers are constitutionally liable for Mr. Kincaid's suicide. *Collins*, 656 F.3d at 1214 (finding that to survive a motion to dismiss, the plaintiff must allege specific facts that plausibly suggest constitutional liability).

3. *The Court cannot consider the Body Camera Footage.*

Plaintiff also offers the body camera footage of an Officer Vargas, recorded during the investigation following Mr. Kincaid's death **(Exhibit A)**. Plaintiff argues that this is further evidence that there had been seven suicides in the cell in which Mr. Kincaid died, that the cell was known colloquially as a "suicide cell," and that Defendant-Officers disregarded the risks associated with that cell **(Doc. 22 at 2)**.

However, this body camera footage was not attached to the complaint, but rather to Plaintiff's Response to the Motion to Dismiss **(Doc. 22, Exhibit A)**. "When evaluating a Rule 12(b)(6) motion, however, we cannot consider information outside the complaint without converting the motion to one for summary judgment." *Platte Valley Wyo-Braska Beet Growers Assn. v. Imperial Sugar Co.*, 100 F. App'x 717, 719 n.1 (10th Cir. 2004); *Burnham v. Humphrey*

9

*Hosp. Reit Tr., Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (same). "When a district court does this, it must provide the parties with notice so that all factual allegations may be met with countervailing evidence." *Burnham*, 403 F.3d at 713; *Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs*, 374 F. App'x 821, 826 (10th Cir. 2010) (same).

The Court now declines to consider the video attached to Plaintiff's Reply. To do so would be to convert Defendant's Motion to a motion for summary judgement. Rather, the Court's inquiry will remain "*the plaintiff's complaint alone* is legally sufficient to state a claim for which relief may be granted." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (emphasis in original). Plaintiff's SAC alone has not sufficiently alleged that the Defendant-Officers violated Mr. Kincaid's Eighth Amendment rights.

Even if this were not the standard to which the Court were bound, the video footage would still not help Plaintiff. Officer Vargas does not refer to the cell as the "suicide cell," nor does he give clear indication that the suicides to which he refers took place in the same cell **(Exhibit A)**. Moreover, all the video tends to support is that Officer *Vargas* knew about seven suicides. It does not clearly indicate that any of the named Defendant-Officers had any personal knowledge of even one of the discussed deaths from which they could draw an inference of a substantial and immediate risk that Mr. Kincaid would commit suicide if placed in the cell. *See Farmer*, 511 U.S. at 825 (requiring that an official know that an inmate faces a substantial risk of serious harm and disregard that risk). An inadvertent failure to provide adequate medical care does not constitute deliberate indifference. *Estelle*, 429 U.S. at 105–06.

Relatedly, viewing the body camera footage as showing what Plaintiff proffers, Officer Vargas discussing seven suicides *in the same cell* still does not automatically suggest that the Defendant-Officers knew of the suicides, that they had control over Mr. Kincaid being placed in

10

the cell without a cellmate, or that they knew that Mr. Kincaid posed an immediate risk of suicide. That alone cannot give rise to an Eighth Amendment violation. *Id.*

    4. *Without an underlying constitutional violation, there can be no* Monell *liability.*

As such, it must follow that Plaintiff has not sufficiently alleged facts to survive a motion to dismiss regarding Defendant GEO's supposed *Monell* liability.

§ 1983 does not automatically authorize liability under a theory of respondeat superior. *Id.* at 1164; *see also Monell*, 436 U.S. at 691. Rather, to establish *Monell* liability, a plaintiff must "allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Burgaz*, 30 F.4th at 1189. In inmate suicide cases, the court's inquiry is into whether the individual officer failed to provide adequate medical care in violation of the Eighth Amendment. *Ernst v. Creek Cnty. Pub. Facilities Auth.*, 697 F. App'x 931 (10th Cir. 2017). "For a municipality . . . to be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation." *Burgaz*, 30 F.4th at 1189.

As discussed above, Plaintiff has not properly alleged that anyone in Defendant GEO's employ violated Mr. Kincaid's Eighth Amendment rights. Plaintiff alleges that Defendant GEO had several policies that have an affirmative causal link to Mr. Kincaid's declining mental health and ultimate suicide **(Doc. 15 at ¶63)**. Plaintiff further alleges that Defendant GEO encouraged and ratified the actions of the Defendant-Officers **(*Id.* at ¶66)**. While these facts may ultimately be true, they are insufficient to support an Eighth Amendment claim on their own. Without properly alleging that individual officers in Defendant GEO's employ committed a constitutional violation, the Court cannot in turn find that Plaintiff has properly alleged that Defendant GEO is liable in its supervisory capacity under *Monell*. *Brown*, 662 F.3d at 1164. As such, the Court finds

that Plaintiff has not alleged sufficient factual matter to state a claim against Defendant GEO.

## II. **Plaintiff has not sufficiently alleged that the Defendant-Officers or Defendant Santestivan violated Mr. Kincaid's Eighth Amendment rights.**

Plaintiff additionally alleges that the Defendant-Officers and Defendant Dwayne Santistevan, former warden or facility administrator of LCCF individually violated Mr. Kincaid's Eighth Amendment rights **(Doc. 15 at ¶¶69, 79)**. Plaintiff has not properly alleged that the Defendant-Officers individually violated Mr. Kincaid's Eighth Amendment rights regarding Mr. Kincaid's suicide in analyzing Defendant GEO's *Monell* liability. As such, the Court will not repeat its analysis here. However, it will discuss Defendant Santistevan's individual liability.

As discussed above, § 1983 does not allow for a finding of liability under a theory of respondeat superior. *Monell*, 436 U.S. at 691. To successfully assert a § 1983 claim under the Eighth Amendment, a plaintiff must show a specific defendant's *personal involvement or participation* in the incident. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (supervisory status alone is insufficient to assert a § 1983 claim; personal involvement is required) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). In alleging a § 1983 action against a government agent in their individual–capacity, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions, has violated the Constitution.*" *Ashcroft*, 556 at 676 (emphasis added). In other words, personal liability under § 1983 "must be based on [a defendant's] *personal involvement*" in a constitutional violation, "and supervisory liability must be based on [a defendant's] Policy." *Brown*, 662 F.3d at 1164–65 (emphasis added).

As such, Plaintiff must show an "affirmative link" between Defendant Santistevan and the supposed constitutional violations through the following elements: (1) personal involvement; (2)

12

causation, and (3) state of mind.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016).  Mere knowledge of a subordinate's allegedly unconstitutional conduct is insufficient to hold the supervisor liable.  *Schneider*, 717 F.3d at 767.

Plaintiff appears to focus on Defendant Santistevan's potential liability in his supervisory capacity, rather than alleging that he was also deliberately indifferent to any risk to Mr. Kincaid **(Doc. 15 at ¶78)**.  An official cannot be held liable in their supervisory capacity if there was no underlying constitutional violation.  *Id*. at 779.  As discussed above, Plaintiff has not properly alleged that the Defendant-Officers under Defendant Santistevan's supervision acted with deliberate indifference towards a substantial risk of suicide in their interactions with Mr. Kincaid.  As such, it follows that the Court cannot find that Plaintiff has properly alleged that Defendant Santistevan could be held liable in his supervisory capacity for any policies giving rise to the conduct discussed above.  *Id*.  Where there was not a properly alleged constitutional violation, there likewise can be no personal involvement from a supervisor based on their policies.  *See Brown*, 662 F.3d at 1164–65.  Because Plaintiff has not properly alleged that there was a constitutional violation, the Court cannot find that Plaintiff has properly alleged facts to support a finding of supervisory liability.

Alternatively, Plaintiff's individual claims of liability fail because the SAC fails to make clear "exactly who is alleged to have done what to whom." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  The Tenth Circuit has made clear that "[t]he [12(b)(6)] standard may have greater bite" in the context of a § 1983 claim against individual government actors, because "they typically include complex claims against multiple defendants." *Id*. (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

13

Plaintiff fails to establish what each Defendants' actions were that would potentially give rise to liability under § 1983. Rather, Plaintiff makes assertions about the Defendant-Officers as a group, and lumps in Defendant Santistevan with the Defendant-Officers, despite it appearing that Plaintiff intended to hold Defendant-Officers to the individual liability standard detailed in *Farmer* and Defendant Santistevan to the standard detailed in *Schneider*. Without clear allegations as to the supposedly culpable actions of *each* individual Defendant, it is not at all clear "exactly who is alleged to have done what" to Mr. Kincaid. *Collins*, 656 F.3d at 1215. The Court cannot find adequate factual allegations to sustain the claims where it is not even clear what actors are supposed to have done what.

Plaintiff's individual claims against Defendants Santistevan, Estrada, Andrade, and Resendez should therefore be dismissed for lack of adequate factual allegations.

III. **The Court declines to exercise supplemental jurisdiction over the loss of consortium claim and any remaining state law claims.**

Defendant also moves to dismiss Plaintiff's loss of consortium claim **(Doc. 20)**. Plaintiff additionally asserts three other state law claims for negligence and gross negligence, violation of prison policy, and intentional infliction of emotional distress (***see generally id.***). The Court declines to address supplemental jurisdiction over all remaining state law claims.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Moreover,

> [n]eedless decisions of state law should be avoided both as a matter of comity and

14

> to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Amer. v. Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 (footnote omitted).

A district court may decline to exercise supplemental jurisdiction even where other jurisdictional or merits issues remain, as allowing state courts to address remaining issues promotes comity and federalism. "[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 2011)), *abrogated on other grounds by Torres v. Madrid*, 141 S. Ct. 989 (2021); *see also Kinney v. Blue Dot Serv. of Kan.*, 505 F. App'x 812, 814–15 (10th Cir. 2012) (affirming district court's decision to not exercise supplemental jurisdiction over state law claims when federal claims were dismissed).

Here, Plaintiff asserts state law claims, including claims for loss of consortium, negligence and gross negligence, violation of prison policy, and intentional infliction of emotional distress. The Court does not have original jurisdiction over these claims. Plaintiff only alleged federal question jurisdiction and did not allege any facts establishing diversity jurisdiction **(Doc. 15 at ¶¶14-15)**. Plaintiff alleges the Court has supplemental jurisdiction over the state law claims and does not discuss the possibility of diversity jurisdiction **(*Id.*)**. Therefore, it appears the Court only has supplemental jurisdiction over these claims. The Court declines to exercise supplemental jurisdiction over the state law claims in this case, for the reasons stated above.

When declining to exercise supplemental jurisdiction, a district court may dismiss the state law claims without prejudice or remand the claims to state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988). Because this case was originally filed in federal court, the Court finds that dismissal without prejudice is appropriate.

## CONCLUSION

Mr. Kincaid's suicide was and is tragic, but "tragedy alone does not give rise to a § 1983 claim." *Ernst*, 697 F. App'x at 935. As such, for the reasons stated above, Plaintiff has not met their pleading burden regarding Defendant GEO's *Monell* liability (Count 1), Defendant Santestivan's supervisory liability (Count 2), Defendants Estrada, Andrade, Resendez or Does 1-10's individual liability (Count 2). The Court further declines to exercise supplemental jurisdiction over the remaining claims (Count III, Count IV, Count V, and Count 6).

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion to Dismiss for Failure to State a Claim **(Doc. 20)** is **GRANTED**. Plaintiff's state law claims are likewise **DISMISSED** without prejudice.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE